**UNITED STATES of America, Appellee,**

v.

**Terrill Elliott EPPS, Appellant.**

**No. 79–2049.**

United States Court of Appeals, Eighth Circuit.

Submitted May 5, 1980.

Decided May 9, 1980.

James P. Rausch, Rausch & Rausch, Bismarck, N. D., on brief, for appellant.

James R. Britton, U. S. Atty. and James S. Hill, Asst. U. S. Atty., Bismarck, N. D., on brief, for appellee.

Before BRIGHT, HENLEY and McMILLIAN, Circuit Judges.

PER CURIAM.

A North Dakota jury found Terrill Elliott Epps guilty of receiving, retaining, and concealing stolen government property in violation of 18 U.S.C. § 641 (1976).[1] The

---

**1.** 18 U.S.C. § 641 (1976) provides in part:

Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or

district court entered a judgment of conviction upon the jury verdict.[2] On appeal Epps contends that the evidence was insufficient to support his conviction and that the district court abused its discretion in failing to ask potential jurors certain questions on voir dire. We reject these contentions and affirm.

■ We consider first Epps' contention that the evidence was insufficient to support his conviction. At trial the evidence disclosed that Epps was discharged from the Air Force in August 1978. At that time Epps arranged to have his personal and household property shipped by the United States to Oregon from his residence in Bismarck, North Dakota.[3] Epps had been stationed at Detachment 14, an Air Force radar installation near Bismarck.

When the moving company picked up Epps' property, it prepared an inventory of items contained in the shipment and submitted the inventory to the Air Force's traffic management officer in Bismarck. The traffic management officer apparently noted that the shipment contained certain items unauthorized for shipment under a military tariff and accordingly alerted the Air Force's transportation office at the Kingsley Field Air Force Base in Oregon. When the shipment arrived in Oregon, the moving company's destination agent sought to clear its delivery to Epps with the Kingsley Field transportation office.[4] Having been alerted that the shipment may have contained unauthorized items, the Kingsley Field transportation office instructed the destination agent to hold the shipment in storage.

Subsequent examinations of the shipment by officers from both the Air Force Office of Special Investigations and the Federal Bureau of Investigation (FBI) revealed that the shipment included not only items unauthorized for shipment, but also items bearing national stock numbers and apparently belonging to the Government. These items ranged from ammunition and ventilating fans (seven) to file cabinets (four) and gloves (five pairs).[5]

Epps conceded that the property had at one time belonged to the Government, but testified that he had acquired it primarily at surplus stores and garage sales. A disposal officer from the Minot Air Force Base testified, however, that the items were not of a kind sold by the military. Further, he testified that the items were so new and commonly used that they would not have entered the Government's disposal cycle.[6] An Air Force special investigations officer testified that, because the items were cur-

thing of value of the United States or of any department or agency thereof * * *; or

Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

2. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, deferred for two years imposition of sentence, fined Epps $1,069.19 (the value of the stolen property), and ordered him to contribute 100 hours to a public service program.

3. The United States provides this benefit free of charge to those leaving military service. The Government shipped Epps' property on United Van Lines.

4. Established procedure required that the destination agent obtain Air Force clearance for delivery of property shipped under a military tariff.

5. At trial the district court admitted 83 exhibits that, the Government claimed, constituted property obtained by Epps in violation of 18 U.S.C. § 641 (1976). All but three of the exhibits carried a national stock number by means of which the Government established their acquisition cost. The Government established the cost of the three unnumbered items by comparing their generic identification to a national stock listing.

The FBI seized the items introduced as exhibits at trial pursuant to a valid search warrant.

6. Epps attacks this officer's testimony on the ground that the officer knew only of the Air Force's disposal system in North Dakota. From the evidence before it, however, the jury could reasonably have inferred both that Epps obtained the items solely in North Dakota and that the Air Force's disposal system did not differ significantly elsewhere.

rently used on a regular basis by the military, it was extremely improbable that they could have been obtained at surplus stores. Detachment 14's supply officer testified that he had stocked items like those admitted into evidence during Epps' tenure at the installation. He also identified four exhibits as missing items, although he could not be certain that the exhibits were the specific items missing. The operator of the only surplus store in Bismarck testified that, with two exceptions, he had never stocked or sold items similar to the exhibits. FBI Special Agent Byron Eden testified that Epps told him that he (Epps) had purchased all the items in and around Bismarck.[7]

Epps' defense at trial was that he had lawfully obtained the items in question at various outlets around the world. Because no one testified to having seen Epps steal the items, the evidence of Epps' guilt in this case is entirely circumstantial. Circumstantial evidence may, however, be equally probative of a defendant's guilt as direct evidence. *See Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). *See also United States v. Lewis a/k/a Baker*, 624 F.2d 1108 (8th Cir. 1980) (*per curiam*) (and cases cited). We have carefully reviewed the record before us. Viewing the evidence, as we must, in the light most favorable to the Government and giving the Government the benefit of all inferences reasonably drawn from the evidence,[8] we conclude that a jury could reasonably infer that Epps stole the items from the United States. We therefore hold that the evidence is sufficient to support Epps' conviction.

Epps also contends that the district court abused its discretion in failing to ask potential jurors certain questions on voir dire. In conducting voir dire the district court asked several questions to determine whether any potential juror would regard military witnesses differently from others and whether any potential juror was pres-

ently or had in the past been employed by the United States. Epps proposed four questions to determine the personal history of each prospective juror's past ties with the military and present connections with military service organizations. Although the district court asked no questions to elicit the specific factual information sought in Epps' proposed questions, we see only a remote connection between answers to Epps' questions and the revelation of a potential juror's bias towards or prejudice against military witnesses. Under these circumstances, we cannot say that the district court abused its discretion in refusing to ask Epps' proposed questions on voir dire. *Cf. United States v. Hall*, 588 F.2d 613, 615 (8th Cir. 1978) (finding no abuse of discretion or prejudice where district court's questions and instructions covered the substance of defendant's requested voir dire).

Accordingly, we affirm.

---

7. Eden testified that Epps made the statement when Eden examined the shipment in Epps' presence at the warehouse of the moving company's Oregon destination agent. Epps claimed that Eden "misunderstood" the statement.

8. *E. g., id.* at 3.